UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

KIT CARSON HOME & MUSEUM, INC.,            No. 20-12130-t11

    Debtor.

## OPINION

Before the Court is Bent Lodge #42 AF&AM's (the "Lodge's") motion to dismiss this chapter 11 case, alleging that the debtor lacked corporate authority to file the case and that the case was filed in bad faith. After a trial, the Court finds that the motion should be granted.

A.    Facts.[1]

The Court finds:

Kit Carson is a famous historical figure who lived in Taos, New Mexico, for many years before his death in 1868. Carson, a Freemason, was a member of the Lodge, which is chartered by the Grand Lodge of Ancient, Free, and Accepted Masons of New Mexico (the "Grand Lodge").[2]

In 1911, the Lodge bought Carson's Taos home and adjacent property (together, the "Property"), wishing to preserve Carson's legacy and his connection with Freemasonry in New Mexico. The purchase was funded with donations from the Lodge's members, other New Mexico lodges, and the Grand Lodge. Between 1937 and 2003, private curators operated a museum on the

---

[1] The Court takes judicial notice of its docket in this case and the docket in *Bent Lodge #42 AF&AM v. Kit Carson Home & Museum, Inc.*, No. D-820-CV-201900488, pending in the Eighth Judicial District Court, State of New Mexico. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket).

[2] Each state is an independent Freemasonry "jurisdiction." Every jurisdiction is governed by a grand lodge, under which constituent lodges may be established. A member in good standing of a lodge is also a member of the jurisdiction's grand lodge. Freemasons in good standing in any lodge in the world are allowed to attend the meetings of any other lodge, but cannot vote.

Property. Dissatisfied with the care and maintenance of the Property, the Lodge took control of the museum in 2003.

Lodge members discovered that the structure of a Masonic lodge was not conducive to running a museum. In February 2005, the Lodge organized Kit Carson Home & Museum, Inc., a New Mexico non-profit corporation ("KCHM").

When KCHM was organized, the Lodge loaned it $50,000 at 7% interest, payable on demand. A Lodge member, Frank Thomas, loaned KCHM an additional $50,000.

From 2005 to 2008, KCHM lost money. The Lodge forgave the accrued interest each year. In 2008, the Lodge bought Mr. Thomas' loan and consolidated it with the Lodge's loan, agreeing to new repayment terms. Under the revised terms, KCHM was to pay $300 a month and make an annual interest payment (reduced to 5%). At the Lodge's option, the interest payment could be forgiven to help KCHM maintain the Property.

In 2008, Debtor's directors were replaced with six new directors, all Lodge members. In 2009, the new directors amended KCHM's bylaws. The 2009 bylaws provide in part:

SECTION 3: COMPOSITION OF BOARD

The Board shall have a majority of directors appointed by the trustees of the Bent Masonic Lodge # 42 AF & AM, which owns the building and property of the Museum. Other directors shall be elected by the Board of Directors.

Article 12 provide that the bylaws could be "altered, amended, or repealed and new Bylaws adopted by approval of two-thirds (2/3) of the Board of Directors."

Being short of cash, the KCHM directors sought financial assistance from the Masonic Charity Foundation of New Mexico (the "Foundation"). The Foundation agreed to give KCHM money on the condition that it formalize its relationship with the Lodge. To satisfy this condition, the Lodge and KCHM signed the following "Resolution" in April 2010:

> WHEREAS, the Brethren of Bent Lodge #42 (hereafter the Lodge) owns the building in which the Kit Carson Home and Museum (hereafter the Museum) is situated and;
>
> WHEREAS the Lodge has been a key component of the Museum, contributing financial, administrative and maintenance support since 1909 and;
>
> WHEREAS the Lodge and the Museum share an identical goal of seeing the Museum succeed and flourish and;
>
> WHEREAS a majority of Directors shall be nominated by the Trustees of the Lodge and voted on by the Brethren of Bent Lodge # 42 AF&AM;
>
> THEREFORE BE IT RESOLVED that the Museum will have at least one person from the Lodge's Trustees on the Museum Board and;
>
> FURTHER RESOLVED, that the Museum welcomes oversight from the Trustees of the Lodge.
>
> The undersigned hereby certify that we are the duly elected and qualified Trustees of the Brethren of Bent Lodge # 42 and the Board of Directors of the Kit Carson Home and Museum and that the above resolution is a true record of our intentions and that said resolution is now in full force and effect without modification or recision [sic].

All KCHM board members and officers signed the Resolution for KCHM. In reliance on the Resolution, the Foundation gave KCHM about $19,000.

In August 2013, the Lodge and KCHM signed a new, 50 year lease of the Property, under which KCHM pays $1 a year in rent but must also maintain the Property, pay property taxes, and provide liability insurance.

Through 2015, KCHM directors were appointed as required by the Resolution and the 2009 bylaws. Until late 2018, the directors made regular reports to the Lodge about KCHM's operations. The Lodge frequently held fundraisers for KCHM. The Lodge and KCHM apparently enjoyed a symbiotic relationship, consistent with the letter and spirit of the Resolution and the 2009 bylaws.

The relationship deteriorated, however, in late 2018 or early 2019. In December 2018, director Noah Shapiro reported to the Lodge that a wall had collapsed on the Property. Although Shapiro promised to provide a follow-up report, he did not.

On April 9, 2019, KCHM's directors purported to amend the corporate bylaws. By then, the composition of the board violated the 2009 bylaws and the Resolution, in that only two of the five directors (DeeDee Miller and Mr. Shapiro) had been appointed by the Lodge. The other three directors (Barbara Schultz, Dan Irick, and John Smedly Jr.) had been appointed by the board, without Lodge input or approval.

The 2019 bylaws provided in part:

(a) A majority of the Directors shall be Master Masons in good standing with the Grand [sic] of New Mexico.

(b) The election of Directors, subsequent to the adoption of these Bylaws, shall be by majority vote of the then current members of the Board present at the time of such election.

Dan Irick testified that the board's main purpose in amending the bylaws was to make technical changes, not to change how directors were appointed. However, Mr. Irick—who testified as an expert in Freemasonry—opined that under the 2019 bylaws, a Master Mason of any lodge in the world would be in good standing with the Grand Lodge. Thus, in his opinion the 2019 bylaws no longer required a director to be a Lodge member or even a New Mexico Freemason.

John Smedly testified that the main purpose of the 2019 bylaws was to make them fit the organization and the direction that the museum was going. In his view, the 2019 bylaws overrode the Resolution.

There is no evidence that any director told the Lodge about the 2019 bylaws. Adoption of the bylaws marked a turning point in the relationship between KCHM and the Lodge: KCHM's directors had decided to take control of KCHM away from the Lodge.

-4-
Case 20-12130-t11    Doc 96    Filed 03/12/21    Entered 03/12/21 15:15:43 Page 4 of 14

On October 21, 2019, the Lodge sued KCHM in state court. The complaint stated claims for breach of contract (the $100,000 loan), breach of lease (the Property lease), and declaratory relief. The Lodge also asked for immediate possession of the Property.

On August 28, 2020, the Grand Lodge ordered Shapiro, Smedley, and a Charles Randall to take some action. The record does not reveal what action was required, but the conclusion is inescapable that it related to the battle for control over KCHM.

Rather than comply with the Grand Lodge's edict, however, on September 14, 2020, KCHM's six directors[3] purported to further amend the bylaws. The new bylaws provide in part:

> (a) Whereas it is desirable that Freemasonry be represented on the Board of Directors, it is not a requirement that any member be a Master Mason in any jurisdiction.
>
> (b) The election of Directors, subsequent to the adoption of these Bylaws, shall be by majority vote of the then current members of the Board present at the time of such election.

The board did not tell the Lodge about the 2020 bylaws.

On October 10, 2020, the Lodge filed a partial summary judgment motion and a motion to dismiss one count of Debtor's counterclaim in the state court action.

On October 27, 2020, the Grand Lodge expelled Messrs. Shapiro, Smedly, and Randall from Freemasonry in New Mexico because they did not comply with the August 28, 2020, edict.

The state court set a hearing on the motions for November 9, 2019. On November 8, 2020, KCHM filed this bankruptcy case. The next day, the KCHM directors adopted resolutions ratifying the bankruptcy filing and allowing Shapiro to act on KCHM's behalf.

---

[3] In addition to Shapiro, Smedley, and Randall, the 2020 directors were DeeDee Miller, Tom Harper, and Deborah Perrin. Miller, Harper, and Perrin are not Masons. The only directors appointed by the Lodge were Shapiro and Miller.

In its motion to dismiss, filed December 4, 2020, the Lodge argues that KCHM's board of directors had no authority to authorize the bankruptcy filing. The Lodge also argues that the bankruptcy was filed in bad faith.

B.     Section 1112(b)[4] Dismissal.

Section 1112(b)(1) provides in part:

> . . . on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

Courts have broad discretion to dismiss a case under § 1112(b)(1). *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989). While § 1112(b)(4) gives examples of "cause," the list is illustrative rather than exhaustive. *Hall*, 887 F.2d at 1044 (the "list is not exhaustive"). Cause for dismissal under § 1112(b)(1) includes lack of corporate authority to authorize the filing. *See, e.g.*, *In re Real Homes, LLC*, 352 B.R. 221, 225 (Bankr. D. Idaho 2005) ("It is generally accepted that a bankruptcy case filed on behalf of an entity without authority under state law to so act for that entity is improper and must be dismissed."); *In re Gen-Air Plumbing & Remodeling, Inc.*, 208 B.R. 426, 430 (Bankr. N.D. Ill. 1997) (lack of corporate authority to file bankruptcy is ground for dismissal); *see generally Price v. Gurney*, 324 U.S. 100, 107 (1945) (if directors "are to be allowed to put their corporation into bankruptcy, they must present credentials to the bankruptcy court showing their authority"); *Hager v. Gibson*, 108 F.3d 35, 39 (4th Cir. 1997) ("*Price* . . . stand[s] for the proposition that . . . where authority . . . is found lacking, the court has no alternative but to dismiss the petition.") (internal quotes omitted); *In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 858 (Bankr.

---

[4] Unless otherwise specified, all statutory references are to 11 U.S.C.

N.D. Ill. 2014) (same); *In re ComScape Telecomms., Inc.*, 423 B.R. 816, 830 (Bankr. S.D. Ohio 2010) (same).

C.  KCHM's Corporate Authority to File This Case.

"[T]he authority to file a bankruptcy petition must be found in the instruments of the corporation and applicable state law." *In re Quarter Moon Livestock Co., Inc.*, 116 B.R. 775, 778 (Bankr. D. Idaho 1990); *In re Milestone Educ. Inst. Inc.*, 167 B.R. 716, 720 (Bankr. D. Mass. 1994) (collecting cases). Under New Mexico nonprofit corporation law, "[t]he affairs of a corporation shall be managed by [its] board of directors." NMSA § 53-8-17. The general authority to manage a corporation's affairs includes the filing of a bankruptcy petition. *In re Milestone Educ. Inst. Inc.*, 167 B.R. at 721; *In re Giggles Restaurant, Inc.*, 103 B.R. 549, 553 (Bankr. D.N.J. 1989) (same); *In re N2N Commerce, Inc.*, 405 B.R. 34, 41 (Bankr. D. Mass. 2009) (same). Thus, KCHM's directors are vested with sole authority to determine whether to file this case.

Nevertheless, "[a] bankruptcy filing is unauthorized if the board of directors purporting to authorize it was not lawfully constituted[.]" *In re ComScape Telecomms., Inc.*, 423 B.R. at 832; *see also In re Autumn Press, Inc.*, 20 B.R. 60, 62 (Bankr. D. Mass. 1982) (bankruptcy case dismissed because the petition was not authorized by a valid board of directors); *In re Acoustic Fiber Sound Sys., Inc.*, 20 B.R. 769, 778 (Bankr. S.D. Ind. 1982) (same); *see generally* 9A Am. Jur. 2d Bankruptcy § 888 ("[T]he board of directors must be lawfully constituted and acting lawfully when authorizing the filing of a petition.").

At issue here is whether the KCHM board was lawfully constituted when it ratified the bankruptcy filing. The Lodge has the burden of proving that the directors lacked authority. *See, e.g., In re ComScape Telecomms., Inc.*, 423 B.R. at 830 ("the burden of proof to demonstrate cause under § 1112(b) lies with the movant").

While KCHM's 2005 articles of incorporation are silent on ownership and control of the corporation, the 2009 bylaws provide that KCHM has no members. Thus, corporate control is vested entirely in the board of directors. The 2009 bylaws gave the Lodge the right to choose a majority of the directors. Lodge control over KCHM's board was reinforced by the Resolution. After 2010 it was clear that, while the Lodge did not own KCHM, it controlled the corporation by controlling the appointment of its directors.

The directors were bound to adhere to the 2009 bylaws. *CA, Inc. v. AFSCME Emps. Pension Plan*, 953 A.2d 227, 234 (Del. 2008) ("Bylaws, by their very nature, set down rules and procedures that bind a corporation's board. . . . In that sense, most, if not all, bylaws could be said to limit the otherwise unlimited discretionary power of the board."); *Brennan v. Minneapolis Soc'y for the Blind*, 282 N.W.2d 515, 523 (Minn. 1979) (directors are bound to follow bylaws); *see generally* 18 C.J.S. Corporations § 168 ("Bylaws, by their very nature, set down rules and procedures that bind a corporation's board of directors"); 8 Fletcher Cyclopedia of the Law of Corporations, § 4197 ("The corporation, and its directors . . . are bound by and must comply with" the corporation's valid bylaws.).

Actions taken by directors in contravention of valid bylaws are void. *In re Sandia Tobacco Mfrs.*, 571 B.R. 449, 457 (Bankr. D.N.M. 2017) (actions taken at an annual shareholder meeting that was not fixed in accordance with the corporation's bylaws had no legal effect); *Klaassen v. Allegro Dev. Corp.*, 2013 WL 5739680, at *19 & n.12 (Del. Ch.) (actions taken by a board of directors in contravention of a mandatory bylaw are traditionally treated as void, citing treatises); *Solomon v. Armstrong*, 747 A.2d 1098, 1114 (Del. Ch. 1999) ("Void acts are those acts that the board . . . has no implicit or explicit authority to undertake[.]"); *Rainbow Mountain, Inc. v.*

*Begeman*, 2017 WL 1097143, at *9-10 (Del. Ch.) (same); *Brennan*, 282 N.W. 2d at 523 ("an illegal constitution of membership" renders "ineffective the action of those members").

As outlined above, KCHM's 2019 board (five directors) and 2020 board (six directors) were improperly constituted and lacked authority to amend the bylaws. The 2019 and 2020 bylaws, therefore, are void, as is the board's attempt to ratify the filing of this bankruptcy case.

D.      The Resolution.

In addition to ignoring the 2009 bylaws, KCHM's 2019 and 2020 boards flouted the Resolution. The Resolution was surely intended to be, and the Court finds that it is, in the nature of a binding contract between the Lodge and KCHM. A corporation cannot nullify a contract by adopting an inconsistent bylaw. *Vanden Bosch v. Mich. Trust Co.*, 35 F.2d 643, 646 (6th Cir. 1929) ("The power of the corporation to amend its . . . by-laws cannot extend to the making of a change which would amount to a repudiation of a contract[.]"); *Realty Acceptance Corp. v. Montgomery*, 51 F.2d 636, 639 (3d. Cir. 1930) (a contract expressly authorized by a corporation through its board of directors "modifie[s], in its legal effect, all inconsistent bylaws and prevails over them"); *Jennings v. Ruidoso Racing Ass'n*, 441 P.2d 42, 46-47 (N.M. 1968) (same); 8 Fletcher Cyclopedia of the Law of Corporations § 4177.10 (amendments to bylaws cannot legally interfere with vested or contract rights); 18 C.J.S. Corporations § 165 ("[T]he general power of a corporation to enact, alter, amend or repeal its bylaws . . . cannot be exercised so as to impair existing contracts[.]"). The directors' attempts to ignore or "overrule" the Resolution are ineffective and the 2019 and 2020 bylaws, both of which violate the Resolution, are invalid. Composition of the 2020 board of directors violated the 2009 bylaws and the Resolution. The board therefore could not authorize the filing of this bankruptcy case.

E.      Laches.

KCHM argues that laches prevents the Lodge from challenging the composition of KCHM's board of directors. KCHM asserts that the Lodge did not enforce the 2009 bylaws or the Resolution before now, even though the Lodge knew that directors were being appointed in ways that did not adhere to those documents. In KCHM's view, it is too late for the Lodge to complain that the directors were not properly appointed.

Laches is an equitable defense that "bars a party's dilatory claim." *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1090 (10th Cir. 2014). The proponent must prove (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121-22 (2002).[5] Laches cannot "be invoked to defeat justice, and it will be applied only where the enforcement of the right asserted will work injustice." *Shell v. Strong*, 151 F.2d 909, 911 (10th Cir. 1945); *see Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) ("Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another."). "The defense is an issue primarily addressed to the trial court's discretion[.]" *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 523 (10th Cir. 1987).

KCHM's laches defense fails for three reasons. First, void acts cannot be validated by laches. *See, e.g., STAAR Surgical Co. v. Waggoner*, 588 A.2d 1130, 1137 (Del. 1991) (equitable doctrines cannot validate void acts); *Durkee v. People ex rel. Askren*, 40 N.E. 626, 628-29 (Ill. 1895) (void and inoperative bylaws do not become effective by acquiescence or estoppel); *Harding v. Heritage Health Prods. Co.*, 98 P.3d 945, 949 (Colo. App. 2004) (void bylaw cannot be enforced

---

[5] New Mexico law is similar. *See, e.g., Garcia v. Garcia*, 808 P.2d 31, 38 (N.M. 1991) (elements of a laches defense are (1) actionable conduct by defendant; (2) plaintiff, with knowledge of defendant's conduct, delays in asserting its rights; (3) defendant did not know plaintiff would bring suit; and (4) injury or prejudice to the defendant if relief is given to plaintiff.).

by the application of laches or other equitable principles); *Waggoner v. Laster*, 581 A.2d 1127, 1137 (Del. 1990) (the principle of estoppel has no application in cases where action taken by directors is illegal or void); *Kolff v. St. Paul Fuel Exch.*, 50 N.W. 1036, 1036 (Minn. 1892) (plaintiff's failure to object to a void bylaw until corporation sought to apply it adversely to his interest did not work an estoppel); *Superwire.com, Inc. v. Hampton*, 805 A.2d 904, 909 n.17 (Del. Ch. 2002) (void shares cannot be given "*any* effect . . . even in the context of an equitable defense"). The 2019 and 2020 directors' corporate escapades are void, for the reasons set out above. Laches cannot breathe life into them.

Second, the Lodge was not dilatory in pursuing its claims against KCHM's directors. The mere passage of time does not constitute laches. *Shell*, 151 F.2d at 911 ("Lapse of time alone does not constitute laches."). While there is some evidence that the Lodge did not monitor the composition of KCHM's board closely after 2015 or so, the Court cannot tell when that composition first ran afoul of the 2009 bylaws and the Resolution. It may not have been until shortly before the dispute between the Lodge and KCHM broke out into the open. While the Lodge could have been more diligent, it had no way of knowing that KCHM's directors were contemplating a coup. Once that became clear, the Lodge moved promptly, suing KCHM in state court and taking its grievance to the Grand Lodge.

Third, KCHM was not prejudiced by any slowness in the Lodge asserting its rights. KCHM is a nonprofit corporation, with few assets and no equity. Its purpose is to operate the Property as a museum. The Lodge has represented to the Court that it stands ready, willing, and able to continue KCHM's mission if the Lodge regains control. KCHM is a bystander in the fight for control over its board. The directors' attempt to wrest control from the Lodge fails. KCHM likely will be benefited rather than harmed by the Lodge's reassertion of control.

F.  Bad Faith

The Lodge also argues that this case should be dismissed because it was filed in bad faith. "A debtor's bad faith in filing a petition can constitute 'cause' for dismissal under 11 U.S.C. § 1112(b)." *In re Picacho Hills Util. Co., Inc.*, 2013 WL 1788298, *11 (Bankr. D.N.M.) (citing *In re First Assured Warranty Corp.,* 383 B.R. 502, 543 (Bankr. D. Colo. 2008 and *In re Frieouf,* 938 F.2d 1099, 1105 (10th Cir. 1991)). In determining whether a Chapter 11 petition was filed in bad faith, courts have considered these non-exclusive factors:

    (1) whether the petition serves a valid bankruptcy purpose such as preserving a going concern or maximizing the value of the debtor's estate;
    (2) whether the petition is filed merely to obtain a tactical litigation advantage;
    (3) whether the debtor's financial problems involve essentially a dispute between the debtor and secured creditors that can be resolved in the pending state court litigation;
    (4) whether it is a single asset case,
    (5) whether there are one or a very few unsecured creditors,
    (6) whether there is no ongoing business or employees;
    (7) whether the pre-petition conduct of the debtor was improper; and
    (8) whether the case is filed to evade one or more court orders.[6]

*Picacho Hills*, 2013 WL 1788298 at *12 & n.25. No factor is determinative and the weight given to each varies with the facts of the case. *In re Melendez Concrete,* 2009 WL 2997920, at *4 (Bankr. D.N.M.) (citing *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir. 1983)). Whether a bankruptcy petition was filed in bad faith "requires the court to consider the totality of circumstances and any conceivable list of factors is not exhaustive nor does one factor create a *per se* test." *In re Sydnor,* 431 B.R. 584, 594 (Bankr. D. Md. 2010) (citation omitted); *see also In re Marshall,* 298 B.R. 670, 681 (Bankr. C.D. Cal. 2003) (analysis of debtor's bad faith is based on the totality of the

---

[6] *Picacho Hills*, 2013 WL 1788298, at *12, *citing In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 122 (3rd Cir. 2004) (applying one or more of the factors); *In re Nursery Land Development, Inc.,* 91 F.3d 1414, 1416 (10th Cir. 1996) (same); *Trident Associates Ltd. v. Metropolitan Life Ins. Co. (In re Trident Associates Ltd.),* 52 F.3d 127, 130 (6th Cir. 1995), *cert denied,* 516 U.S. 869 (1995) (same); *Phoenix Piccadilly Ltd. v. Life Ins. Co. of Virginia (In re Phoenix Piccadilly, Ltd.),* 849 F.2d 1393, 1394 (11th Cir. 1988) (same).

circumstances). Dismissal for bad faith falls within the Court's sound discretion. *See Squires Motel, LLC v. Gance,* 426 B.R. 29, 34 (N.D.N.Y. 2010) (citing *In re First Conn. Consulting Group, Inc.,* 254 F. App'x 64, 68 (2d Cir. 2007).

The Court weighs the factors as follows:

| Factor | Analysis |
| --- | --- |
| Does the petition serve a valid bankruptcy purpose such as preserving a going concern or maximizing the value of the debtor's estate? | This factor weighs against Debtor. The directors chose bankruptcy because they did not like their chances in state court. It seems foolish, however, to try to take the museum away from the Lodge, which owns the Property and historically has found ways to fund revenue shortfalls. It is possible Debtor could assume the Property lease, cure the substantial defaults, and reorganize, in the face of the Lodge's strong and legitimate opposition. Such an outcome is very unlikely, however. Further, the bankruptcy filing has brought into sharp focus the directors' improper attempt to usurp control of the Debtor from the Lodge. |
| Was the petition filed merely to obtain a tactical litigation advantage? | This factor weighs against Debtor. The directors' primary purpose in filing this case was to avoid state court and move their dispute with the Lodge to a different forum. |
| Do KCHM's financial problems involve essentially a dispute between KCHM and secured creditors that can be resolved in the pending state court litigation? | This factor weighs against Debtor. The Lodge is a secured creditor, given its landlord lien. Debtor's main financial problem is its inability to generate enough income to maintain the Property. Debtor is unlikely to solve that problem in this case. Because of that, the pending state court action would resolve the dispute between the Lodge and the Debtor. |
| Is this a single asset case? | Not strictly speaking, but Debtor has one predominant asset: the lease of the Property. Without the lease, Debtor has no purpose and no ability to operate. Why Debtor chose to go to war with its landlord and historical benefactor is a mystery. This factor weighs against Debtor. |
| Does KCHM have only one (or very few) unsecured creditor(s)? | KCHM appears to have about 24 unsecured creditors. This factor weighs in Debtor's favor. |

| | |
|---|---|
| Is there an ongoing business or employees? | KCHM continues to operate the museum and pay its employees. This factor weighs in Debtor's favor. The weight is lessened by the fact that Debtor's business has historically depended on the Lodge, which Debtor has gone out of its way to antagonize. |
| Was KCHM's pre-petition conduct improper? | This factor weighs against Debtor. As discussed above, the actions taken by Debtor's directors were improper. |
| Was the case filed to evade court orders? | No. There were no court orders pending when the case was filed. The case was filed, however, to avoid a likely adverse state court ruling. This factor is neutral. |

Weighing the factors and the totality of the circumstances, the Court concludes that the case was filed in bad faith and should be dismissed. The directors should have known that their efforts to seize control of KCHM would not be viewed kindly by this or any other court. The directors should have tried to negotiate with the Lodge openly rather than engage in surreptitious corporate skulduggery. If the Lodge refused to accede to any legitimate proposals the directors might have made, the directors could have resigned.

## Conclusion.

There could be good reasons why KCHM's directors should have complete, unfettered control of KCHM. Regardless, they do not have that control, and their recent attempt to seize it is both void and regrettable. The Lodge's motion to dismiss will be granted by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 12, 2021
Copies to: Counsel of record